J. N. ELDRIDGE ET AL. ·V. A. E. HARGREAVES ET AL.

[FILED OCTOBER 28, 1890.]

1. **Pleading**: REFERENCE TO FACTS PREVIOUSLY STATED. While the facts constituting separate and distinct causes of action or defense are required to be separately stated, so that each count is distinct from every other and complete in itself, yet, where a fact has been stated once in a pleading in a cause, it may be referred to in any subsequent pleading, or subsequent count of the same pleading, and, by proper reference, be made a part thereof.

2. ————: THE ANSWER construed, and *held*, to state all the essential facts necessary to constitute a counter-claim for a breach of warranty.

3. **Warranty**: STATEMENTS OF PARTNER. In an action against a partnership for a breach of warranty, it is competent to prove that one member of the partnership made the representations

and warranty for the firm that induced the sale, although the pleading alleges that the warranty was made by the firm. A partnership is bound by the representations and warranties made in the sale of its goods by a member thereof.

4. ———: ———: EVIDENCE: PLEADING. In such an action, it is not necessary to prove each representation set up in the pleading, but it is sufficient if any one of the material representations averred is established which induced the purchase.

5. ———: ———: ———. The testimony offered by the plaintiffs to establish propositions of compromise made by the defendants, was rightly excluded.

6. ———: ———: ———. In a suit for a breach of warranty brought by A against B, it is not competent to prove the representations made by C to D in the sale of the same kind of goods.

7. Instructions. *Held*, That the instructions correctly embodied the law applicable to the case.

ERROR to the district court for Lancaster county. Tried below before FIELD, J.

*Chas. O. Whedon,* for plaintiffs in error, cited: *Dale v. Hunneman,* 12 Neb., 225; *Peck v. Trumbull,* Id., 136; *Stewart v. Balderston,* 10 Kan., 144–5; *Vassear v. Livingston,* 13 N. Y., 249; Bliss, Code Pl., secs. 367, 431; *Swan v. Swan,* 15 Neb., 453.

*Cornish & Tibbets, contra,* cited: Maxwell, Pl. & Prac., 393; 1 Sutherland, Damages, 277; *Brizsee v. Maybee,* 21 Wend. [N. Y.], 144; *Masterson v. Mayer,* 7 Hill [N. Y.], 61; *Marsh v. Webber,* 13 Minn., 99; *Young v. Filley,* 19 Neb., 543.

NORVAL, J.

This suit was brought by the plaintiffs in error to recover the sum of $1,203.90, with interest thereon, for 350 cases, and fifty kegs of orange cider, sold and delivered to the defendants. The defendants filed the following answer :

"For answer to plaintiffs' petition herein, defendants admit that on or before the 12th day of July, 1887, he entered into contract with plaintiffs for the purchase of goods mentioned in plaintiffs' petition, and that he agreed to pay for the same the sum of $1,203.90 on the 11th day of October, 1887; that said goods were delivered, and that the same are not paid for, as alleged in plaintiffs' petition.

"2. For a further defense, and by way of counter-claim, defendants allege that the said plaintiffs, as an inducement to the defendants to purchase from them said goods mentioned, falsely and fraudulently represented and warranted to the defendants that the said goods, consisting of orange cider, were of a good merchantable quality, and valuable for the wholesale trade; that the said orange cider was manufactured from orange juice and lime juice, from California fruit; that it was properly named orange cider, and that the defendants, relying upon said representations and warrants, purchased from the plaintiffs the said goods, as above stated; that at the time of said representations and purchase the defendants were engaged in the business of wholesale grocers, and purchased said goods for the purpose of selling in the ordinary course of trade to retail dealers, all of which at the time was well known to the plaintiffs, and plaintiffs sold said goods for said purpose.

"3. Defendants aver that said orange cider was not as represented and warranted, but, on the contrary, it was manufactured entirely from harmful and inexpensive drugs and water, and is of no marketable value and not fit for the purpose of the wholesale trade, all of which plaintiffs, at the time, well knew.

"4. By reason of the false representations and warrants as aforesaid, by which plaintiffs (defendants) were deceived and induced to make said purchase, and of the above premises defendants have sustained damages in the sum of $1,500, for which sum defendants ask judgment, together with costs of suit."

The plaintiffs replied, denying every allegation of the answer. The case was tried to a jury, who found that there was due the plaintiffs upon the cause of action set forth in their petition $1,321; that there was due the defendants upon their counter-claim the sum of $1,075, and assessed the plaintiffs' recovery at $246. The defendants filed a remittitur of $9 from the amount found due on their counter-claim, and a judgment was rendered in favor of the plaintiffs for $255.

Upon the trial, the plaintiffs objected to the defendants introducing any testimony for the reason that the facts stated in the answer are insufficient to constitute a defense to the plaintiffs' cause of action, or to establish a counter-claim in favor of the defendants. The objection was over-ruled, and the ruling is assigned as error.

While the answer is divided into four distinct paragraphs, it is clear that the pleader only attempted to state a single cause of action against the plaintiffs, and in determining the sufficiency of the pleading it must be construed as an entirety. The first paragraph of the answer makes reference to the contract declared upon in the petition, admits that the defendants entered into the same, received the goods in the petition mentioned, and agreed to pay therefor the amount herein stated. The remainder of the answer consists of a plain statement of the facts constituting the defendants' counter-claim. It is urged by counsel for plaintiffs that in construing that part of the answer setting up a counter-claim, we must not consider the first paragraph of the answer nor any allegation of the petition which is referred to in the answer. While it is true, as a general rule, that each count in a petition or answer should be separate and distinct from every other count and be complete in itself, it does not follow, when a fact has been once stated in a pleading, that it is necessary to state it again in the same case. An allegation in one count may be referred to in any subsequent count and

41

made a part thereof by reference, and the allegation referred to will be considered in construing such subsequent count. So an answer may refer to an allegation of the petition and by such reference make it a part of the answer. Any other rule would require unnecessary repetitions. The facts set up in the petition, which are admitted by the answer, must be considered in construing the answer. The defendants having alleged that they were damaged by reason of the breach of warranty in the sum of $1,500, it was not necessary that they should have plead in the answer what would have been the value of the goods if they had been as warranted, or their value as they actually were when received. The answer states all the essential facts necessary to constitute a counter-claim for a breach of warranty. It is substantially the same as the form given in Maxwell's Pleading and Practice, for a counter-claim for a breach of warranty.

The testimony shows that A. E. Hargreaves, one of the defendants, met in the city of Omaha, in July, 1886, C. C. Higgins, one of the plaintiffs, who, at that time, sold to the defendants a large quantity of an article called orange cider, which was to be thereafter delivered to the defendants in the city of Lincoln, for which they agreed to pay $1,357.50, and that Higgins exhibited to Hargreaves several bottles of the drink, which were labeled as follows:

CALIFORNIA
ORANGE CIDER.
The Pure Juice of the Ripe Fruit Clarified.
Nature's Most Healthful Beverage. Superior to Lime Juice or Lemonade
as a Refreshing Drink. Especially recommended as a
Fruit Alterative, to
be taken at lunch
or meal time.

The testimony introduced by the defendants tends to prove that Higgins, to induce the sale, represented to Har-

greaves that the article was orange cider, manufactured in California from orange juices, and that it was a good salable article.

Charles C. Higgins, one of the plaintiffs, testified that he made no false representations to Hargreaves, but that at the time of the sale he truthfully informed Hargreaves of all the facts regarding the cider. Higgins, in his testimony, admitted that he knew when he made the sale to the defendants that the beverage was not made of orange juice, and that it was put up in Columbus.

But three of the persons who were present at the time of the sale and heard the conversation, were witnesses upon the trial. They were A. E. Hargreaves, C. C. Higgins, and Herbert C. Bowman. The testimony of the interested witnesses—Hargreaves and Higgins—is conflicting. What one avers as true, the other denies. Hargreaves was corroborated by the testimony of Bowman, a disinterested witness, who was present when the order for the goods was given, and heard the entire conversation. We quote from his testimony:

Q. State what was said at the conversation.

A. Well, Mr. Higgins took us upstairs and he said he had this orange cider there, and sent down for some samples—sent for ice water, and he poured it out, and we all tasted the orange. He said a couple of young fellows had gone to California and had seen these oranges going to waste off the trees, and not used, and they conceived the idea of making this cider of it. They had furnished money to these young fellows to make cider of these oranges, and Mr. Hargreaves asked him if it was put up in Columbus. He said yes, it was put up in bottles there—made in California and bottled in Columbus. He asked him why he had it put up in Columbus. He said it would cost more in bottles—they would have to ship them back, and pay double first-class freight—the bottles would cost him double than putting it up in Columbus. We talked the thing

over—talked about the labels, one thing and another—why they did not put their name on the labels, it being a California product, and having it put up in Columbus, the trade would not understand why it was not put up in California, and they could not do that. We talked it over a while, and Mr. Hargreaves bought some of the goods.

Q. Do you remember of anything being said about the firm of W. T. Coleman?

A. Yes; he said W. T. Coleman wanted the agency for the west; further than that I don't remember about W. T. Coleman, only his saying he wanted the agency of it.

Q. Did Mr. Higgins say anything about this being good for the trade, selling in temperance states?

A. Yes; Mr. Hargreaves asked him why he did not put it up as orange wine. He said a good many people made objections to it in temperance states, and temperance people would not buy it unless it was put up under the brand of cider.

Q. Did he state how it sold?

A. Yes; he claimed it was selling best where they had sold it, and it was a good salable article, if I remember.

The defendants had never had any experience in orange cider, and in making the purchase, the testimony tends to show, that they relied upon the representations made by Higgins. It is conclusively shown that the cider was not made from the juice of the orange, but that it was manufactured by two firms at Columbus, Ohio, from the following formula: Granulated sugar, 15 parts; citric acid, $\frac{75}{100}$ of a part; tartaric acid, $\frac{75}{100}$ of a part; alcohol, $\frac{4}{10}$ of a part; oil of orange, $\frac{1}{10}$ of a part; water, to make the remainder of the 100 hundred parts, and colored with burnt sugar.

The testimony introduced by the defendants further shows that the cider soon fermented and leaked out of the kegs and bottles in which it was shipped, was unsalable. and of but little, if any, value. If the testimony introduced by

the defendants is true, then Higgins knowingly misrepresented and warranted the goods and perpetrated a fraud upon the defendants.   It is manifest that the verdict should not be set aside as being against the evidence.

Several of the rulings of the trial judge, made on the admission of testimony, are complained of by the plaintiffs in error.   We will notice such of these as seem to us to require attention.   The defendant A. E. Hargreaves was, against the plaintiffs' objection, permitted to testify that he had never had any experience in orange cider, and that he relied upon the representations made by Higgins.   The objection urged against this testimony is, that there is no allegation in the answer that the defendants relied upon the representations made by one of the plaintiffs.   The answer alleges that the plaintiffs made the representations and that the defendants relied thereon.   Under this averment it was competent to prove that one member of the plaintiffs' firm made the statements that induced the defendants to make the purchase.   The plaintiffs were bound by the acts of Higgins and by the statement made by him. They could not accept part of his acts without adopting all.

There was no reversible error committed in allowing Hargreaves to testify that orange cider was a new article to the trade, and that the cider bought by the defendants soon fermented and escaped from the kegs and bottles.   If it be conceded that the witness had not shown himself competent to testify whether orange cider was a new or old article, yet the error, if any was made in allowing the witness to testify upon that subject, was cured when the plaintiffs proved by the depositions of Wm. I. Newlove, one of the manufacturers, that they commenced its manufacture in the latter part of December, 1886, and ceased making it in July, 1887.   The plaintiffs' own testimony shows that it could not have been known very long to the trade.   Although the answer contains no allegation in regard to orange cider keeping, the testimony offered by the

defendants, to the effect that it would not keep, was admissible under the allegation of the answer that "it is of no marketable value and not fit for the purpose of the wholesale trade." If the cider soon fermented and leaked out of the casks, it was not a valuable article for wholesalers to handle.

It appears in testimony that a day or two after the order was given for the goods, the defendants concluded to countermand the same. Hargreaves having known for some years W. G. Higgins, a brother of one of the plaintiffs, and not remembering the correct address of plaintiffs' firm, sent the following telegram to W. G. Higgins:

"JULY 9, 1887.

"*To W. G. Higgins, care Shuman, Mann & Higgins, Chicago, Illinois:* Have your brother cancel our order, if not already shipped. Will write giving reasons.

"HARGREAVES BROS."

The objection as made to the admission of this telegram was because it was not addressed to or received by any party to the suit, and as being incompetent and immaterial. The testimony shows that this message was received by C. C. Higgins, one of the plaintiffs, and was answered by him, the answer being preserved in the record. It is quite immaterial that the telegram was addressed to one not a party to the suit, so long as it is shown that it came into the possession of the plaintiffs and that they recognized it by sending a reply. We fail to see the relevancy of this message to the issues that were being tried. It was not claimed that the order given for the goods was rescinded. The answer admits the receipt of the goods, and it was incompetent for the defendants to prove that an attempt was made by them to cancel the order. But as numerous other letters and telegrams, in substance the same as this one, were introduced without objection, the plaintiffs were not prejudiced by the admission of the message complained of.

The answer alleges that the plaintiffs represented " that the said orange cider was manufactured from orange juice and lime juice from California fruit." . The testimony introduced by the defendants tends to show that the cider was represented to be made from pure orange juice, and that nothing was said at the time about lime juice entering into its manufacture. It was not necessary that the defendants should prove that each representation set up in their answer was made, but it was sufficient if they established any one of the material representations therein contained, that the same was untrue, and that the defendants were induced thereby to make the purchase.

The plaintiffs on the trial in the district court offered to prove by the witness C. C. Higgins that one of the defendants in October, 1887, offered to pay $900 in settlement of plaintiffs' claim, and that at the same time the plaintiffs offered to deduct from their claim $100. The proposed testimony was rightly rejected, for the obvious reason that a proposition of compromise made by a party which is not accepted by the other is not competent evidence. The defendants had a perfect right to buy their peace, and that they made the plaintiffs an offer for the purpose of settlement, is no evidence that the defendants did not have a valid counter-claim against the plaintiffs' cause of action. Counsel for the plaintiffs in error say : "If the answer had denied the defendants' liability, the offered testimony would not have been admissible, but when they admitted their liability and sought to recover a sum greater than their admitted indebtedness to plaintiffs, any testimony which tended to show want of good faith in their claim was admissible as a defense to that claim." It certainly is quite immaterial that the defendants in their answer admit entering into the contract declared upon in the petition. If the defendants had brought a separate suit against the plaintiffs for a breach of warranty in the sale of goods sued for in this action, the offer of compromise would not have been

competent evidence on the trial of that suit.   That the same matters are set up by way of counter-claim does not change the rule as to the admission of such testimony.

The defendants called as a witness O. J. King, who testified that he purchased from Sprague, Warner & Co., of Chicago, a quantity of the same kind of beverage as that purchased by the defendants.   The court permitted the witness, over the plaintiffs' objection, to answer this question:

Q. What inducements were held out to you by Sprague, Warner & Co. to purchase their goods?

A. They represented them to me as being the pure juice of the orange, and a new thing in the market.

In this ruling of the court we think there was error prejudicial to the plaintiffs.   It was not competent to prove the representations that were made that induced King to make the purchase.   The testimony objected to did not in the least tend to show that these plaintiffs made any representations to the defendants to induce the sale.   The only effect of this testimony was to mislead the jury, and to cause them to believe that if the goods were warranted to King, they were likewise warranted to the defendants.

The remaining errors assigned upon the rulings of the trial court, upon the introduction of testimony, will not be noticed, as they are not likely to occur upon a retrial of the cause.

We will next consider some of the objections urged against the charge of the court.   The jury were told by the second instruction to ascertain the amount due the plaintiffs on their cause of action, then find how much, if anything, was due the defendants upon their counter-claim, and to return a verdict in favor of the party entitled to the larger amount for the difference between the two sums. It is urged that the answer fails to state a cause of action against the plaintiffs, and for that reason this instruction was wrong in directing the jury to ascertain the amount

due the defendants upon their counter-claim.   We held in the first part of this opinion that the answer was sufficient, and what we there said disposes of the criticism made upon this instruction.

. The fourth instruction is as follows:

. "You are instructed that, upon the counter-claim of the defendants, the burden of proof is upon the defendants to establish by a preponderance of evidence every material allegation of the counter-claim as set forth in defendants' answer.

"The material allegations of the answer are:

"'First—That the plaintiffs at the time of the sale falsely and fraudulently represented that the goods in question, consisting of orange cider, were of a good and merchantable quality and valuable for the wholesale trade, and that the said orange cider was manufactured from orange juice and lime juice from California fruit.

"'Second—That in making said purchase of goods the defendants relied upon the said representations of the plaintiffs.

"'Third—That the goods were not as represented and warranted, but were a manufactured article.

"'Fourth—That the goods were of no marketable value, and not fit for the purpose of the wholesale trade.

"'Fifth—That the defendants have sustained damages, by reason of the failure of the plaintiffs to comply with their representations concerning the goods in question.'"

It is urged that this instruction is erroneous, because it told the jury that the answer alleged that the representations were made at the time of the sale, and that it also omitted to state one of the material averments of the answer, to-wit, that the plaintiffs warranted the goods sold.

The answer alleges that "the plaintiffs, as an inducement to the defendants to purchase from them said goods mentioned, falsely and fraudulently represented and warranted to the defendants that said goods, consisting of orange cider,

were of a good and merchantable quality, and valuable for the wholesale trade; that the said cider was manufactured from California fruit, and that it was properly named orange cider; and that the defendants, relying upon said representations and warrants, purchased from the plaintiffs the said goods." The only reasonable construction which can be placed upon this language is, that the representations were made at or prior to the time the goods were purchased by the defendants. It is true the fourth instruction omitted to inform the jury that one of the material averments of the answer was that the plaintiffs warranted the goods. This omission was, however, fully covered by the fifth, sixth, and seventh of the instructions given. It is a rule of universal application that instructions must be considered as a whole.

The point is also made that this instruction is erroneous, because it states that the allegation in the answer, that the orange cider was of a good, merchantable quality, and valuable for the wholesale trade, was a material averment. There was no error in this.

The article was entirely new to the defendants. They knew nothing of its selling qualities. It was purchased for their wholesale trade, which the plaintiffs, at the time, well knew. The representation, if made, was a part of the description of the quality of the cider, and was a material issue in the case.

It is urged that, under the third paragraph of the fourth instruction, the defendants could have recovered if the cider had been made of pure orange juice, because it would then have been a manufactured article. The jury could not have understood the words "manufactured article," as used by the court in the instruction, to mean cider made of orange juice, but the article put up according to the formula, proved on the trial. By the eighth instruction, the jury was told, in effect, that if the plaintiffs represented that the cider was a manufactured article, and

not the real juice of the orange, the defendants could not recover. In view of this instruction the jury could not have been misled by the language of the third paragraph of the fourth instruction.

By the ninth instruction, it was stated that the measure of the defendant's damages was the difference between the value of the cider at the time of the sale, and what it would have been worth had it been as warranted. It is claimed that there was no evidence upon which to base this instruction. The testimony introduced by the defendants was to the effect that the cider, as received, was of but little value, and that it was sold to the defendants for $1,203.90. This was sufficient proof of its value as warranted, when no other testimony was introduced by either party on that branch of the case. For the error pointed out the judgment is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.