HANOVER FIRE INSURANCE COMPANY ET AL. V. AMERICA STODDARD ET AL.

52  745
56  604
56  703

FILED DECEMBER 9, 1897.  No. 7623.

1. Pleading: AMENDMENT. In a proper case the court may permit a pleading to be amended to conform to the proof.

2. Insurance: VIOLATION OF POLICY: STORAGE OF GASOLINE. Evidence on the subject of the storage of gasoline on insured premises *held* insufficient to show that a clause of the insurance policy in regard to such storage had been violated.

3. Instructions: ASSIGNMENTS OF ERROR. Alleged errors in giving instructions should be separately assigned in the motion for a new trial as well as in the petition in error.

4. ———: HARMLESS ERROR. An instruction in a party's favor, though erroneous, is not ground for reversing a judgment against him. (*Chicago, K. & N. R. Co. v. Wiebe*, 25 Neb., 543.)

5. ———: CHARGE FOREIGN TO ISSUES. A refusal to give requested instructions which are not pertinent to any of the issues on trial is not error.

6. ———: REQUESTS: REVIEW. It is the duty of a trial court to instruct

a jury on the law of the case whether requested by counsel to do so or not; and a request that the court will charge the jury on the issues of law between the parties or to charge the jury on all material questions at issue adds no force to the general obligation; and where the court has given instructions, which, whether erroneous or not, cannot be regularly reviewed because of the lack of proper specific assignments of objections or exceptions thereto, their quality will not be examined or determined under an assignment which alleges a refusal of the general requests to charge the jury on the issues of law or to charge the jury on all material questions in the case.

7. Review: INADMISSIBLE EVIDENCE: HARMLESS ERROR. The admission of incompetent or immaterial testimony is not ground for the reversal of a judgment if the same was not prejudicial to the rights of the complaining party. (*Graham v. Frazier*, 49 Neb , 10; *Rightmire v. Hautman*, 42 Neb., 119.)

8. ——: ——: ——. "The admission of incompetent testimony to prove a fact is a harmless error, where such fact is established by other sufficient uncontradicted evidence." *Lamb v. State*, 40 Neb., 312, followed.

9. Evidence: OFFER OF COMPROMISE. An offer of compromise made by one party to an action and not accepted by the other is not generally admissible in evidence.

10. Review: INADMISSIBLE EVIDENCE: OBJECTIONS. A judgment will not be reversed for the erroneous admission of testimony if the same testimony, or ample testimony of the same nature, was admitted without objection.

11. Evidence of Agency. The evidence on the point of the authority of certain parties to act as agents of some of the parties to the action examined and *held* sufficient to establish that they were such agents.

12. Insurance: VALUE OF PERSONALTY: EVIDENCE. Testimony in regard to value of the insured personal property destroyed by a fire *held* sufficient to sustain the finding of the jury as to such value.

13. ——: ALLOWANCE OF ATTORNEY'S FEE: REVIEW. An assignment of error of the trial court's action in assessing the amount and allowing the recovery of an attorney's fee against a party *held* without avail, for the reason that the record presented here does not disclose the allowance of such a recovery.

ERROR from the district court of Harlan county. Tried below before BEALL, J. *Affirmed.*

*C. O. Flansburg*, for plaintiffs in error.

*R. L. Keester, contra.*

HARRISON, J.

In this action, instituted in the district court of Harlan county by the defendants in error, it was pleaded in the petition, after a statement of the corporate character of the plaintiffs in error, the insurance companies, and their manner of conducting the business, etc., that on March 29, 1890, America Stoddard was the owner of a residence building in Republican City, Nebraska, also of some household goods and other personal property then in said building, and all of which was, on said date, for the consideration of the sum of $27 then paid by her, insured by plaintiffs in error against loss by fire, etc.,—the building in the sum of $1,500, and the personal property in the sum of $300; that there was issued to her a policy evidencing such contract of insurance, which she lost, and on February 12, 1892, in consideration of the surrender of the rights of defendant in error under the lost policy, there was issued by the companies, in lieu thereof, another policy evidencing the insurance of the same properties and in similar sums as had been of the terms of the lost policy. The defendant in error Brown Gifford, it was pleaded, was interested in the real property as a mortgagee thereof, and the contract of insurance contained a clause by which any loss was payable to him to the extent of his interest. It was also complained that the insured properties were totally destroyed by fire May 30, 1892, and that the companies had failed and refused to pay the loss after full performance by defendants in error of all the conditions of the policy on their part required by its terms to be performed. The answer consisted of a general denial of each and every allegation of the petition and an affirmative statement that on May 30, 1892, America Stoddard, of defendants in error, was the owner of a dwelling house in Republican City, Nebraska, which was occupied by herself, her husband, and their family as their homestead; that on said date America Stoddard and the family, except the husband, were ab-

sent from Republican City, and the home was under the
care and control of the husband and actually occupied
by a tenant and his family. There were further state-
ments by which the origin of the fire by which the prop-
erties were destroyed was attributed to some act of J. D.
Stoddard, and within the knowledge at the time of Amer-
ica Stoddard. The reply contained admissions of some
of the statements of the answer and explanations of the
absence of the Stoddard family from the former home,
but was in the main a general denial of the new matter
set up in the answer. A trial resulted adversely to the
companies and the cause has been for them removed to
this court by error proceedings.

On April 3, 1894,—the day of the trial,—the plaintiffs
in error, on application therefor, were granted leave to
amend their answer to conform to the facts. Pursuant
to such permission the following was added to the an-
swer: "That by the terms of the said policy, it was
agreed that the same should become void and of no force
and effect in case the assured should have or should keep
upon the said premises, at any time during the continu-
ance of said policy, gasoline in quantities to exceed five
gallons at any one time, whether the loss originated
therefrom or otherwise; that, after obtaining the policy
sued upon, the plaintiffs kept upon the said premises
large quantities of gasoline, to-wit, a barrel of gasoline,
in violation of the terms of the said policy, increasing the
risk under the said policy, of which these defendants had
no knowledge or notice, and to which these defendants
never consented, thereby releasing these defendants from
any and all liability under the said policy." It is as-
serted in the argument in the brief for defendants in
error that this portion of the answer cannot be consid-
ered; that it was not of the issues in the trial court, etc.
The record, as we have before stated, discloses that on
the day of the trial leave was granted to amend the an-
swer to conform to the proofs. This must have been
after the introduction of the evidence, the purport of

which prompted the action on the part of counsel for the companies, which resulted in the allowance of the amendment. The amended answer was filed May 25, 1894,— more than a month after the rendition of the judgment. It was entirely competent and proper for the trial court, in its discretion and within certain limits, to allow the amendment of the pleading to conform to the proofs. (*Scroggin v. Johnston*, 45 Neb., 714; *Barr v. City of Omaha*, 42 Neb., 341.)

In the body of the policy of insurance was the following clause: "Gasoline Stove Permit. Permission is hereby given for the using of a gasoline stove; the reservoir to be filled by daylight only, and when the stove is not in use. Warranted by the assured that no artificial light be permitted in the room when the reservoir is being filled and no gasoline, except that contained in said reservoir, shall be kept within the building, and not more than five gallons, in a tight and entirely closed metallic can, free from leak, on the premises adjacent thereto." This is clearly a warranty or an agreement that no gasoline except that in the reservoir of the stove shall be kept in the building, and "not more than five gallons, in a tight and entirely closed metallic can, free from leak," on the premises and adjacent to the building. "Adjacent" here is used, we presume, in the sense of "near," "close," "in proximity," and applied to the can and its position relatively to the building. During the examination in chief of America Stoddard she testified that among the articles destroyed by the fire was what she styled an "oil pump." On cross-examination the attorney for the companies drew out some additional facts in regard to this pump and its use, which formed the basis for the amendment to the answer and their claim that the policy had been avoided by the use or storage of gasoline on the insured premises in a manner prohibited by the terms of the policy.

Under an assignment that the verdict was not sustained by the evidence, our attention is directed in the

argument to the evidence in regard to gasoline and whether it was shown to have "been kept on the insured premises and if so, when, where, and how it was stored." The entire evidence on this subject contained in the record was as follows:

Q. State if you had an oil pump in the house.

A. Yes, sir.

Q. What was it used for?

A. Used for pumping gasoline.

Q. State to the jury how it was used and how you came to have a pump of this kind.

A. We got gasoline by the barrel and put the barrel in the ground and used the pump for pumping it out of the barrel.

Q. What was the value of the oil pump?

A. I think it was four dollars.    *    *    *

Q. You say you had an oil pump that you used for pumping gasoline?

A. Yes, sir.

Q. Where did you get this gasoline?

A. We had not used it or the gasoline stove for quite a while.   We used wood.

Q. Where was this pump at that time?

A. In the basement.

Q. Wasn't it being used?

A. Not at that time.

Q. It was not part of your useful household furniture?

A. We intended to use it.

Q. You were not using it at that time?

A. No, sir.

Q. How long since you had used it?

A. I don't remember.

Q. Well, about how long?

A. I don't remember.

Q. Six months?

A. Perhaps.

Q. Where had you had this barrel of gasoline buried in the dirt?

A. We had it when we lived on the farm and when we came to town it was not all used out.

Q. You had it back of the house somewhere?

A. Between the basement and the creek.

Q. You think it was six months before this you had used the pump?

A. I can't just say.

It is clear that this does not disclose that the gasoline was stored on the insured premises, or if so, that it was adjacent, near, or close to the building or within the time of the existence of the policy in suit. There was nothing in the evidence to call for the avoiding of the contract of insurance if it be conceded—which we do not decide— that if a use or storage of the gasoline had appeared not allowable under the terms of the contract, this, in and of itself, would have rendered the policy void. The evidence was too indefinite and uncertain to warrant even an inference or an assumption that the clause of the policy which we have quoted had been violated and to demand its enforcement; hence this assignment is without avail.

Error in the instructions numbered 1, 3, 6, 7, 9, and 10, given at request of defendants in error, are argued separately in the brief. The only assignment of error in the motion for a new trial which refers in any manner to the instructions prepared and asked for defendants in error reads as follows: "9. The court erred in giving instructions numbered ——, given by the court at the request of and upon the motion of the plaintiffs, to which defendants excepted at the time." This does not designate any particular instruction,—is too indefinite; hence the assignments of error specifically in the petition in error in regard to the instructions requested by defendants in error cannot be considered. (*Bankers Life Ass'n v. Lisco*, 47 Neb., 345; *Hamilton v. Goff*, 45 Neb., 340.)

Complaint is made in separate assignments in the petition in error of instructions numbered 14, 15, and 16, given by the court on its own motion. These were

grouped in a single assignment of the motion for a new trial. The one numbered 15 submitted an issue not raised by the answer and presented a defense for the consideration of the jury which the companies had no right to have submitted. The instruction may have been faulty. This we will not now discuss or decide, but its effect, if any, could but be favorable to plaintiffs in error; certainly not unfavorable or prejudicial to their rights. An instruction in a party's favor is not ground for reversing a judgment against him. (*Chicago, K. & N. R. Co. v. Wiebe*, 25 Neb., 543.) The one instruction of the three which were grouped not being open to the objection urged, the assignment need not be further considered, and will be overruled. (*Stoppert v. Nierle*, 45 Neb., 105; *Schelly v. Schwank*, 44 Neb., 504; *Jenkins v. Mitchell*, 40 Neb., 664.)

At the close of the introduction of testimony, counsel for plaintiffs in error requested the court "to prepare written instructions for the jury in this case, instructing them upon the issues of law between the two parties." This was followed by three special requests. These were not numbered; but, passing over any matters of mere proper form which were lacking, neither in its subject-matter was directed to any issue which at the time the requests were made was mentioned in the pleadings; hence the court did not err in refusing to charge as requested in the three special requests. At the close of the special requests this appeared: "Defendants [plaintiffs in error] ask the court to prepare and give to the jury written instructions on his own motion covering all the material questions." It may be said of the two general requests, the language of which we have quoted, that it was the duty of the court "to instruct the jury upon the law of the case whether requested by counsel to do so or not" (*York Park Building Ass'n v. Barnes*, 39 Neb., 834); and the general requests added no force to the obligation which rested on the court to perform its duty in this particular as in all respects. The trial court

gave 16 instructions in which, no doubt, it attempted to fairly submit the issues to the jury. Whether it succeeded or not might have been reviewed had there been proper assignments in the motion for a new trial of complaints in relation to the instructions. That they, or some one or more of them, may have been erroneous cannot be raised or determined under an alleged refusal of the trial court of a request to charge the jury on the issues of law between the parties or to charge the jury on all the material questions.

No available errors have been indicated under the assignment in relation to the trial court's refusal to instruct; hence the assignment must be overruled.

Error was assigned of the reception of certain exhibits by which it was sought to establish that the party who had signed the policy as local agent of plaintiffs in error was in fact such agent; also oral evidence introduced of the same fact. The plaintiffs in error in their amended answer pleaded the existence of the policy and invoked the aid of one of its stipulations, and in so doing recognized that it had been properly issued and by one possessing the full authority to act for them in its issuance. Whether the evidence objected to was competent or not to prove the authority of the party who had acted as local agent, can make no difference since the fact was for the purposes of this suit admitted and the reception of the evidence was in no degree prejudicial.

It is contended that the trial court erred in receiving in evidence the charter of each of the companies; that the same was immaterial. It may be conceded, without an examination or decision of the question of whether the evidential matters referred to were competent for their intended purpose, that, as the issues were presented by the pleadings as they now stand in the record, they were wholly immaterial as evidence. But we cannot say their reception was prejudicially erroneous; hence the assignments directed against the court's actions in their admissions as evidence will be overruled.

52

It is argued that there were errors committed in the admission of evidence relative to what occurred between the attorney for defendants in error, who, prior to the institution of this suit, was representing them in the collection of the claims under the policy, and the state or special agent of plaintiffs in error, who called at the office of the attorney for the purpose of talking over the matter of the loss. It is asserted that this state or special agent had no authority to state what the evidence disclosed he did in regard to a settlement of the loss, as it was not shown that he had been authorized or had any authority to adjust this loss or losses in general. On the back of the policy in suit appears what is there styled a "stipulation," of which the following is a portion: "In case of loss, the assured shall forthwith give notice thereof to the general agent of these companies in the city of New York;" and the policy conveys the information in relation to the identity of the general agent, his office, etc., in the following, printed on it: "Alexander Stoddard, General Agent, Office No. 34 Nassau Street, New York." The evidence shows that immediately after the fire the local agent at Republican City sent a telegram to this general agent in New York city and received in response thereto a letter in which it was stated that the telegram had been received "in regard to the loss under this policy" and the state agent at Omaha, Mr. Fisher, had been notified to take charge of the matter. It was Mr. Fisher, the state agent, who appeared at Republican City and had the interview with the attorney for the defendants in error. We think his authority to act in the matter of the loss under the policy and its adjustment was sufficiently established. In detailing the conversation between him and Mr. Fisher relative to the loss, the witness was allowed to state over the objection of counsel for plaintiffs in error that Mr. Fisher offered to pay $900 in settlement of the loss,—in effect, a compromise of the claims. This, it is asserted, was an error, as the companies had a right to

buy their peace,—to effect a compromise if they could,—
and the substance of any offers of compromise or settle-
ment made by them and unaccepted could not be given
in evidence to prejudice their plea of nonliability. This
contention is correct. The offer of compromise was not
admissible (2 Wharton, Evidence, sec. 1090; *Kierstead v.
Brown*, 23 Neb., 595; *Eldridge v. Hargreaves*, 30 Neb.,
638); but its erroneous admission did not prejudice the
plaintiffs in error, as evidence of practically the same
offer of compromise was allowed to be given without
objection. The fact would have appeared to the jury if
this portion of the evidence now under consideration had
been rejected, as properly it ought to have been.

America Stoddard testified that she had a conversa-
tion in the office of the local agent of the companies with
George T. Higgins, who appeared as their representative
or agent, in which he offered to pay her $900 in full set-
tlement of the claims for loss, and raised the offer to
$1,300. It is claimed that there was no evidence that
Mr. Higgins was an agent of the company, or had any
authority to act in the matter; and further that such
evidence as was received of his authority was incom-
petent. Mrs. Stoddard and the local agent for the com-
panies were allowed to give testimony on the subject of
the agency of Mr. Higgins, which was probably incom-
petent; but that this was done was not prejudicial for
the reason that Mr. Fisher whom, it will be remembered,
the general agent of the companies had stated in re-
sponse to the telegram informing him of the loss, he
would put in charge of the matter, and who appeared
at Republican City and investigated the loss, stated
while there to the attorney for defendants in error that
Mr. Higgins "would call in a short time and see about
the matter." It further appeared in evidence that
George T. Higgins was a traveling agent in this state
for the companies at the time and did go to Republican
City and there represented the plaintiffs in error in an
attempted settlement of the claims arising under the

policy in suit. We think his authority was sufficiently proven. The testimony of the offer to compromise was incompetent, but to it there was no objection. There was an objection to the question in answer to which this piece of testimony was given, but the objection was not pertinent to the question and was properly overruled. The testimony of the offer to settle the claims was not responsive to the question, but it was not objected to nor was a motion made to strike it out. The error of its admission is not presented by the record.

It is assigned for error that the trial court allowed a witness to testify what companies composed the New York Underwriters. We cannot discover wherein this testimony was material under the issues. It should probably have been excluded, but its admission was entirely without prejudice to the rights of the complaining party; hence the error, if any, does not call for a reversal of the judgment.

Of the assignments of error is one directed against the action of the trial court in admitting in evidence a photograph of the insured building as it existed at the time of the issuance of the policy, and up to the time of its destruction by fire. This was introduced in connection with the testimony of the value of the building. It is argued that inasmuch as the loss of the building was total and under the provisions of our law the recovery, if any, must be for the value stated in the policy, this testimony was wholly without force and should not have been admitted; that its tendency was to confuse and mislead the jury, to enlist the sympathies of the jury in favor of America Stoddard because of her loss of such a house and home as was shown in the photograph, and thus prejudice the rights of plaintiffs in error. Suffice it to say of this portion of the evidence, that if its reception was erroneous it was for the reason that it was immaterial, and we are satisfied it was not hurtful to the rights of plaintiffs in error; hence the assignment must be overruled.

During the introduction of the rebuttal evidence there was offered and received for defendants in error a letter and the envelope in which it had been inclosed. It bore a postmark by which it appeared to have been mailed at Valley Falls, Kansas, May 28, 1892, and the impress of the stamp of the receiving office was of Republican City, this state, May 29, 1892. This letter was of date May 28, 1892, and was shown to have been written by Daisy Stoddard, a daughter of America and J. D. Stoddard, of date May 28, 1892, and was written and addressed to the latter at Republican City, where he then was. Objection was made to the admission of this letter, which was overruled, and the alleged error in such action is now pressed in argument. That this letter was received of the date shown and conveyed the information which it did were facts directly contradictory of portions of the testimony of witnesses on the part of plaintiffs in error; hence its admission was not erroneous. On the back of the envelope to which we have just referred, as it appears in the record now, there is penciled some poetry which, in its role of testimony, is the subject of a somewhat vigorous attack by counsel for plaintiffs in error. It is asserted by counsel for defendants in error that this was not on the envelope at the time of the latter's reception in evidence. However this may be, we cannot see wherein the poetry, if received, could have been harmful to the rights of the complainants in a degree which calls for a reversal of the judgment.

Under the assignment that the verdict was not sustained by the evidence, it is urged that the amount assessed by the jury as the value of the personal property destroyed by fire was too large, and, to the amount of $40, unsupported by any evidence. An examination of the evidence bearing on this point discloses sufficient to sustain the finding of the jury in the particular under consideration.

One assignment of error refers to the actions of the trial court of and concerning assessment of an attorney's

fee against the plaintiffs in error. The record as presented here does not show that the trial court allowed the recovery of an attorney's fee against and of the plaintiffs in error; hence this assignment fails.

No errors have been presented which call for a reversal of the judgment and it will be

AFFIRMED.