WILLIAM BARR v. MARTHA A. POST.

FILED NOVEMBER 17, 1898.   No. 8472.

1. **Recaption.** It seems that the right of recaption of personal property exists in this state.

2. **Assault and Battery:** DAMAGES: JUSTIFICATION: PLEADING. In a civil suit for assault and battery, where the answer is a general denial, evidence of justification is inadmissible.

3. ————: ————: EVIDENCE. *Held,* That the direction of the district court to the jury to take into consideration "any permanent internal injury" sustained by plaintiff, was justified by the evidence.

4. **New Trial:** MISCONDUCT OF COUNSEL. The refusal of the district

Barr v. Post.

court to grant plaintiff in error a new trial because of alleged misconduct of defendant in error's counsel *held*, under the circumstances, not erroneous.

5. **Erroneous Admission of Evidence:** HARMLESS ERROR. A judgment will not be reversed for the erroneous admission of evidence, if the facts have already been testified to without objection.

6. **Assault and Battery:** DAMAGES: EVIDENCE: SERVICES OF PHYSICIAN. In a civil suit for damages for assault and battery, where the plaintiff offers no evidence that he has paid or become liable for services rendered him by a physician who is his witness, it is not error to refuse to permit the witness to be asked on his cross-examination "whether he has rendered plaintiff a bill for his services" and "whether he has been paid for such services."

7. **Cumulative Evidence:** HARMLESS ERROR. The rejection of evidence, cumulative in its nature and which tends to prove a fact already established and not in issue in the case, if error, is without prejudice.

8. **Rejection of Evidence:** HARMLESS ERROR. It is not error to reject an offer of proof not within the limits of the question on which the offer is based.

9. **Cross-Examination.** The latitude which a cross-examination may take is a matter resting largely in the discretion of the trial court, and error is more likely to be committed by undue restriction than by extension of it.

10. **Trial:** HYPOTHETICAL QUESTIONS. *Held*, That the court committed no prejudicial error in refusing to permit plaintiff in error's witness, on his re-direct examination, to answer a certain hypothetical question.

11. **Assault and Battery:** ACTION FOR DAMAGES: REPUTATION OF DEFENDANT: EVIDENCE. In a civil suit for damages for assault and battery the defendant's reputation is not an issue. Accordingly, *held* not error for the court to exclude an offer of proof by defendant that he had never used profane language.

12. ———: ———: ———. In such a case also *held* not error to exclude an offer of proof made by defendant that he had never been arrested and prosecuted criminally for the alleged assault and battery, as such evidence did not tend to prove or disprove any issue on trial.

13. ———: WITNESSES: OPINIONS. Certain evidence of defendant in error set out in the opinion *held* not objectionable as being the opinion of the witness.

14. **Counter-Claim.** For facts to constitute a counter-claim, they must arise out of the transaction set forth in the petition as the foundation of the plaintiff's action, or be connected with the subject-matter of that action. (Code of Civil Procedure, sec 101,)

15. **Assault and Battery:** VERDICT FOR PLAINTIFF FOR DAMAGES. The evidence examined, and, although unsatisfactory, *held* to sustain the verdict of the jury.

16. **Damages for Assault and Battery.** Damages of $2,000 awarded by the jury *held*, in view of the evidence, not excessive.

ERROR from the district court of Lancaster county. Tried below before CORNISH, J. *Affirmed.*

*Morning & Berge,* for plaintiff in error.

*Thomas Darnall, J. S. Kirkpatrick,* and *Stewart & Munger,* contra.

RAGAN, C.

Prior to September, 1893, William Barr owned a brick block in the city of Lincoln. In the upper story of this block were a number of lodging rooms. Barr employed Mrs. Martha A. Post to attend to these rooms and keep them in order. She and her family, it appears, occupied a room in the block. She was intrusted with the keys to the various lodging rooms. For some reason her services became unsatisfactory to Barr, and he discharged her. She, however, refused to surrender to Barr, on his demand, the keys for the various lodging rooms. On September 6, of said year, Barr attempted to take his keys out of the hands of Mrs. Post. This, however, it seems he failed to accomplish. Mrs. Post brought the present action in the district court of Lancaster county against Barr to recover damages for an alleged assault and battery inflicted upon her by Barr at the time he attempted to take from her possession the lodging keys. She had judgment, and Barr has brought the same here for review on error.

1. On the trial the district court refused to instruct the jury at the request of Barr that he had the right to take possession of these keys from Mrs. Post, provided in doing so he did not use any more force than was actually necessary for that purpose, nor thereby commit a breach

of the peace. This action of the court, it is insisted, was erroneous. The ruling of the court involves the right of a citizen, without recourse to law, to seize and take possession of his personal property wrongfully in the possession of another, provided in so doing he does not commit a breach of the peace, nor use any greater force than is actually necessary for the purpose of recaption. It seems that this right of recaption of personal property exists. (*Mussey v. Scott*, 32 Vt. 84; *Cross v. Marsten*, 44 Am. Dec. [Vt.] 353; *Manning v. Brown*, 47 Md. 506; *Stearns v. Sampson*, 8 Am. Rep. [Me.] 442; *Sterling v. Warden*, 51 N. H. 217; *Hite v. Long*, 18 Am. Dec. [Va.] 719.) But the record here does not present for decision the question whether it does. Barr's answer to the charge of assault and battery was a general denial, and under this issue evidence which tended to justify the assault and battery was inadmissible. (*Levi v. Brooks*, 121 Mass. 501; *Cooper v. McKenna*, 124 Mass. 284.) The court therefore did not err in refusing the instruction asked.

2. The next complaint relates to instruction number 6 given by the court. It is as follows: "You should take into consideration the pain and suffering, bodily and mentally, endured by the plaintiff; also any permanent internal injury, if any such has been shown by the evidence, such pain or injury being caused by the wrongful act of the defendant." Counsel for the plaintiff in error insist that the giving of this instruction was erroneous, because the record contains no evidence that Mrs. Post had sustained any permanent internal injury as the result of the alleged assault and battery. The evidence on behalf of Mrs. Post tended to show that soon after this alleged assault and battery she suffered a miscarriage, and that this was the result of the battery inflicted upon her by Barr; that about a year after this time she was in a condition of "tubal pregnancy" or "extra-uterine pregnancy;" that an operation was performed upon her at this time and a foetus removed. Physicians called

as experts in her behalf testified that a miscarriage was
sure to unfit a woman for labor; that very few women
ever afterwards regained their strength; that Mrs. Post
could never completely recover; that Mrs. Post had re-
troverted uterus; that this produced constipation and
caused, and would continue to cause, suffering and pain.
To the question, "Was this condition temporary or per-
manent in this injury?" the physician answered: "You
mean in this particular case? Q. Yes, sir. A. Why, so
far as my knowledge goes, it was continuous in this
case." This is not very satisfactory evidence; but we
think it is evidence which tends, at least, to show that
Mrs. Post was suffering from an internal permanent in-
jury, and we cannot therefore say that the court erred in
instructing the jury as it did.

3. On the trial of the case counsel for Mrs. Post called
her husband as a witness, and at the time of doing so
stated to the court that he was about to call plaintiff's
husband as a witness; that the witness had been very
sick and was at that time in a critical condition, and
that he made this announcement to the court because
he did not know what might happen while the witness
was on the stand. To this statement by counsel, in the
presence of the jury, counsel for Barr excepted, and re-
quested the court to instruct the jury that the statement
made by the counsel should not be considered by them,
which the court did. It is now insisted that the action
of counsel was uncalled for and improper; that the state-
ment was made for the purpose of arousing the sympa-
thies of the jury, as Post and his wife were poor people,
and Mrs. Post was compelled to labor for the support of
herself and family. We cannot conceive of any reason
for counsel making the statement to the court that he
did before calling this witness, and if we thought this
conduct of counsel influenced the action of this jury in
the slightest degree, we would then be prepared to hold
that the district court erred in not granting Barr a new
trial because thereof. But we do not think it possible

that the verdict of the jury was in the least influenced by the statement made by Mrs. Post's counsel. The court at once told the jury that they should not consider the remarks made by counsel, and we cannot therefore say that the court erred in refusing to grant Barr a new trial because of the statement made by Mrs. Post's attorney.

4. The next complaint is of the action of the district court in permitting Mrs. Post on her redirect examination to answer the following question:

Q. What was the condition of Mr. Post at that time?

A. He was sick, very weak; he had had what the doctors call —————— "hemorrhage of the brain," on the 9th of January, and it left him in a very weak condition; and it was a case of necessity that I should try to get something for my little ones to get bread and butter.

It is insisted that this evidence was not only incompetent, but was highly prejudicial, as the record showed that Barr was a man of some means and that Mrs. Post was a poor woman, and therefore it was calculated to prejudice the jury. But the answer to the argument is that the jury were already in possession of the very facts testified to by Mrs. Post in answer to the question made the subject of this assignment. She had already testified to this same state of facts in her examination in chief without any objection being interposed by Barr. It may be conceded that the admission of this evidence was error, but a judgment will not be reversed for the erroneous admission of evidence if the same or similar testimony has already been admitted without objection. (*Hanover Fire Ins. Co. v. Stoddard*, 52 Neb. 745; *Lamb v. State*, 40 Neb. 312.)

5. One Dr. Holyoke was called as a witness in behalf of Mrs. Post and testified to having treated her for some time immediately after the alleged assault and battery. On his cross-examination counsel for Mr. Barr asked him the following questions:

Q. You have not been paid for your services yet down there, have you, doctor?

Q. Now, doctor, did you ever present a bill for your services in this matter of Mrs. Post's sickness?

The district court sustained objections to these questions, and its action in that respect is the next complaint made here. Mrs. Post had offered no evidence that she had either paid or become liable to pay for any services rendered by this physician. We think, therefore, that the court was right in ruling out this proffered testimony as immaterial.

6. As already stated, the testimony introduced in behalf of Mrs. Post tended to show that an operation was performed on her something like a year after the occurrence of the alleged assault and battery and at that time a foetus was removed from her. Barr called Dr. Beachley as a witness in his behalf; and after proving by him that he was a practicing physician, and had been for some years, and was somewhat acquainted with Mrs. Post, and that he was present at the time the operation was performed, and that he went there at the request and to assist one Dr. Crim, Barr's counsel asked him this question: "I will ask you to state what conclusion was reached by the physicians there as to the nature of the ailment of the difficulty that necessitated that operation." The court refused to permit the witness to answer the question, and this ruling is now complained of. We will assume for the purposes of this case that the testimony was competent; that the witness was competent to testify, and that the exclusion of the evidence was error. But another physician for Barr was permitted to testify that he was present when the operation was performed upon Mrs. Post and testify to the conclusions reached by the physicians as to the nature of the ailment that necessitated the operation. This testimony was not attempted to be disputed by Mrs. Post. Counsel for Barr offered to prove by the witness that Mrs. Post's ailment was "tubal" or "extra-uterine pregnancy;" and the other witness for Barr testified that this was the ailment of Mrs. Post. The rejection then by the court of the testi-

mony offered, though erroneous, was without prejudice, as it would have been cumulative in its nature toward the establishment of a fact which stood undisputed in the record. In the offer of proof made by counsel he also offered to show that the witness on the stand, if permitted, would testify that the extra-uterine pregnancy of Mrs. Post could not have been caused by the result of such an assault and battery of her as that to which she testified; but this offer was not within the limits of the question which the court refused to permit the witness to answer. If counsel desired to have his witness testify that the condition of Mrs. Post could not have been the result of an assault and battery upon her, he should have asked the witness that question, and then, had the court refused to permit it to be answered, made his offer of proof.

7. The next complaint is that the court permitted a physician called as an expert witness by Barr to be unduly cross-examined. It would subserve no useful purpose to set out the questions which the court permitted to be propounded to this witness. The latitude which a cross-examination may take is a matter which rests largely in the discretion of the trial court, and generally a court is more likely to commit an error by unduly restricting a cross-examination than by extending it. It must suffice to say that we do not think the court abused its discretion in permitting this witness to be cross-examined.

8. On the trial Barr called as an expert witness in his behalf a physician named Stevens, who testified to an acquaintance with Mrs. Post, to having been present when the operation was performed upon her about a year after the alleged assault and battery, and that the operation was performed for "extra-uterine pregnancy." He was then cross-examined at length by counsel for Mrs. Post and re-examined by counsel for Barr and excused. Subsequently he was recalled by counsel for Barr and asked:

49

Q. Now, vomiting of blood, if caused by a blow, is caused by a rupture of a blood-vessel in the stomach, is it not?

A. Yes, sir.

Q. How soon after would the bleeding begin?

A. Immediately.

Q. Then the vomiting of blood would necessarily follow the bleeding?

A. Yes, sir.

Q. Now I will ask you, doctor, if you know whether or not vomiting can be produced by excitement?

A. Yes, sir.

Q. By fits of anger?

A. I should call that excitement.

Q. Do you know whether or not the plaintiff is so constituted as that excitement would readily cause vomiting?

The last question the district court refused to permit the witness to answer, and this action of the court is now assigned for error. We assume that the offered evidence was competent and that the physician was competent to give it. But under no view of the case that we are able to take can we see that the exclusion of the evidence by the court was prejudicially erroneous to the plaintiff in error.

9. On the trial Mrs. Post testified that Barr, at the time of the assault and battery upon her, used certain profane language. Barr in his examination denied the use of this language. He was then asked by his counsel, "I will ask you to state whether or not you are a man given to the use of profane language." The objection to this question was sustained and Barr's counsel offered to prove that he never used profane language in any way. The court excluded the offer. We do not think it would have been error for the court to have admitted this evidence. (*Beakes v. Da Cunha*, 27 N. E. Rep. [N. Y.] 251; *Blumgren v. Anderson*, 48 Neb. 240.) And we are quite clear that the court did not commit any reversible error

in excluding it. This is a civil action for damages for assault and battery, and. the defendant's reputation is not an issue in the case.

10. Barr also offered to testify, while upon the witness stand, that he had never been arrested or prosecuted criminally for the assault and battery for which he was sued. The court excluded this offered evidence, as immaterial and incompetent. In this ruling we think the court was correct. The evidence offered did not tend to prove any issue on trial. The fact that Barr had not been arrested and prosecuted criminally for assault and battery was not evidence which even tended to prove that he was not guilty thereof.

11. On the trial a man named Van Atta testified that he was on the upper floor of the Barr block at the time the trouble occurred between Mrs. Post and Mr. Barr, and that Barr did not strike Mrs. Post, but that she struck him; and, in effect, he testified to having seen the whole transaction. In rebuttal Mrs. Post was questioned on the subject of Van Atta's presence as follows:

Q. You may state if any person, any man, was standing there at that time.

A. No, sir; there could not have been, because I would have run right into him.

Q. You may state if James H. Van Atta was in the sideway or standing up there at that time. Could he have been there and you not have seen him?

This question was objected to, as calling for a conclusion and opinion of the witness. The court overruled the objection and the witness answered: "No, sir; he could not." Counsel for Barr complains that by this ruling the court permitted Mrs. Post to state her opinion. We do not think so. We think that she stated what she did as a matter of knowledge. She was not asked for her opinion. and she did not give it. She simply said Van Atta could not have been present and she not have seen him.

12. Another complaint relates to the action of the dis-

trict court in striking out of Barr's answer what is denominated therein a "second defense" pleaded by way of counter-claim. In this counter-claim Barr alleged in substance his ownership of a brick block in the city of Lincoln in the winter of 1893; that he employed Mrs. Post as housekeeper and chambermaid for the block; that she was to remain in his employ so long as she should prove satisfactory; that she did not prove satisfactory, and that he discharged her; notified and requested her to leave the building, but that she disregarded such notice and request, and continued forcibly and unlawfully to remain in the building for nearly four months, during which time she deprived Barr of the keys to the various rooms of the building and discouraged tenants from renting and occupying the same; that she gave the building a bad reputation, which rendered it almost impossible for Barr to procure tenants for the same, although during the time many tenants were seeking rooms; and that by reason of Mrs. Post's conduct the building was vacant and unoccupied during the winter of 1893-'94; and that but for her conduct and slanderous remarks in reference to him, Barr, he could have procured tenants for all the rooms in said building, and that by reason of the conduct of Mrs. Post in the premises he had been damaged. The court did not err in striking out this defense. It did not arise out of the transaction set forth in the petition as the foundation of Mrs. Post's action, nor was it connected with the subject-matter of that action within the meaning of section 101 of the Code of Civil Procedure.

13. A final argument is that the verdict of the jury is excessive, and appears to have been rendered under the influence of passion and prejudice. The verdict is for $2,000, and if the testimony of Mrs. Post is true, the verdict is not too large; and perhaps it is only fair to say that her testimony is corroborated. She testified that Barr knocked her down and pushed her against a stair banister; that her arm, shoulder, and thigh and side were badly bruised; that she was injured by being

knocked down and pushed against the banister, became sick, and was for a week or ten days immediately thereafter confined to her bed, during part of which time she vomited blood and suffered pain; that this assault and battery inflicted upon her by Barr caused her to suffer a miscarriage; that she was in bed much of her time after the assault and battery for two years; that she has never been able to work since that time, never regained her strength, while before that time she was well and strong; that much of the time since the assault and battery she has been compelled to walk with crutches.  Barr himself emphatically denies that he ever struck this woman, or kicked her, and the testimony on his behalf tends to corroborate his story.  The testimony is conflicting.  We cannot reconcile it.  That is just what juries are for; and, the jury by its verdict has said that they believed the story of Mrs. Post and her witnesses.  In addition to this a district judge presided at this trial, heard these witnesses testify, observed their conduct, and he has put the seal of approval upon this finding of the jury by overruling the motion for a new trial.  To our minds the testimony is unsatisfactory in many respects.  It is a somewhat startling proposition that Barr should have knocked this woman down, kicked her, and bruised her, and yet not have been able to take the lodging keys from her, the attempt to do which caused the trouble.  Still the evidence sustains the jury's finding that Barr did assault and beat this woman, and it sustains her theory that she was injured thereby, and that she suffered weeks of pain; that she was confined to her bed by sickness; that she had at least two miscarriages which were caused by the beating and bruising inflicted upon her by the plaintiff in error.  We cannot say then that the verdict is excessive; and since the record contains no error which is prejudicially erroneous to the plaintiff in error, the only thing that is left for us to do is to affirm the judgment of the district court, and it is so ordered.

                                        AFFIRMED.