CHARLES L. WOLF, APPELLEE, v. H. CLAY VANNOY ET AL., APPELLANTS.

FILED SEPTEMBER 20, 1915.    No. 18221.

1. **Parent and Child**: ENTICEMENT: WAIVER. Where a minor has voluntarily left home and sought an asylum with his sister and her husband, and the father notifies his son-in-law in writing that if he harbors the minor he will claim his wages at a sum named in the notice, such notice is a waiver of the right of the father to maintain an action in tort for damages for enticing the son away and depriving him of his services and companionship.

2. ———: ———: DAMAGES. In such case, the measure of recovery is the reasonable value of the services of the minor, and, in any event, should not exceed the amount specified in the notice.

APPEAL from the district court for Lancaster county: P. JAMES COSGRAVE, JUDGE. *Reversed.*

*Berge & McCarty* and *Burr, Greene & Greene,* for appellants.

*R. H. Hagelin, contra.*

BARNES, J.

Action to recover damages for enticing away plaintiff's minor son and for the wages of the minor. A trial in the district court for Lancaster county resulted in a verdict for plaintiff for $855, on which the court rendered judgment, and the defendants have appealed.

It appears that the plaintiff and the defendant Clay Vannoy both reside near Waverly, in Lancaster county, and the defendant Pearl Vannoy lives at Archer, in Merrick county; that Pearl Vannoy is the husband of the

plaintiff's daughter. The evidence shows that in May, 1910, the plaintiff sent his two minor sons to visit with their sister at the home of the defendant Pearl Vannoy, in Merrick county; that they remained there about two weeks, when one of the boys returned to his father, while the other boy, Harry by name, remained at his sister's place. In a few days the plaintiff went to Archer, and brought Harry home with him. When he arrived at Archer, he found the defendant Clay Vannoy at the home of his son, Pearl Vannoy, where he had arrived the day before for a visit. So far as the evidence shows, there was no difficulty between the parties at all, and they all went to a picture show in town the evening of plaintiff's arrival. The next day plaintiff and his son Harry left for Waverly. In a short time Harry, without consulting his father, left home and returned to Merrick county, where he remained from the 11th day of July, 1910, until the 2d day of February, 1911, at which time the plaintiff again brought him home. Meanwhile, on the 13th day of August, 1910, plaintiff served a notice in writing on each of the defendants, which notice reads as follows:

"July 13, 1910. Mr. Clay Vannoy, Prairie Home, Nebraska. Dear Sir: Mr. Wolf of Waverly, Nebraska, the father of Harry Wolf, instructs me, in his behalf, to notify you that Harry Wolf, his son, is a minor and under exclusive custody and control of his father. You are further notified that his father will demand the sum of $22.50 per month for his services in case of his employment by you or any one else, and the sum will be payable to the father, and no one has authority to pay any part of said wages to the son, Harry Wolf. Respectfully yours, Justice of the Peace."

The notice to Pearl Vannoy was addressed to him, and was in the exact language of the one above quoted. After Harry left the home of Pearl Vannoy and his wife, and returned to the home of his father, this action was commenced. By plaintiff's petition he sought to recover the sum of $25 a month for Harry's wages while he was living away from home, his expenses incurred in returning Harry

to his home, together with the damages, which he alleged he had sustained by being deprived of the companionship of his son. The total amount sued for was $6,000.

The testimony in this case is conflicting. Plaintiff's son was the only witness who testified that the defendants induced him to remain away from home and take employment from the defendant Pearl Vannoy. He testified, in substance, that Clay Vannoy told him not to go back home, and he would see that he was not sent to the reform school, and that, if he stayed and worked for him until he was 21 years old, he would give him a span of mules. He also testified that Pearl Vannoy wanted him to stay and work for him. The defendant Clay Vannoy testified that he never made any representations to Harry that he would give him a span of mules if he stayed and worked for him until he was 21 years old; that he never had any conversation with him of any kind which would be an inducement for him to leave home; and that he never furnished him any money for that purpose. The utter lack of any motive on the part of Clay Vannoy to induce the boy to remain away from home would seem to stamp his testimony with the element of truth. Mamie Vannoy, who is Harry's sister and the wife of Pearl Vannoy, testified that Harry did not want to return home, and for that reason, and that alone, she permitted him to stay at their home in Merrick county. It is not our purpose, however, to pass upon the sufficiency of the evidence. It was somewhat conflicting, and the credibility of the witnesses was a question for the jury.

As we view the case, however, when the plaintiff notified the defendants that if they harbored his son Harry he would claim his wages, and that no one was authorized to receive payment of the same except himself, he gave them to understand the extent of his claim, and waived the question of tort. He, in effect, said that if they employed his son he would require them to pay him $22.50 a month as his wages. The burden of proof was upon the father to show that the son was induced to leave his services and control at the request of the defendants, and if, as stated

by Mamie Vannoy, he left his father voluntarily, and chose to remain with her and her husband in Merrick county, an action for tort would not lie. *Kenney v. Baltimore & O. R. Co.,* 101 Md. 490, 1 L. R. A. n. s. 205; Wood, Master and Servant, sec. 15. In 29 Cyc. 1679, it is said: "A parent's election to sue for the child's wages is a waiver of the tort and bars his right to recover for enticing the child away." *Thompson v. Howard,* 31 Mich. 300, and *Hopf v. United States Baking Co.,* 27 N. Y. Supp. 217, support this rule.

The defendants requested the court to instruct the jury as follows: "You are instructed that, while one may not interfere with the custody or government of parents, the law does not require that all instincts of humanity and good impulses be stilled. One has no right to encourage a child in disobedience, or assist a child in keeping away from the home of the parent, but it is not the duty of one to expel from his door a child that has, without assistance or encouragement, sought an asylum." This request was refused. In the light of the testimony of Mamie Vannoy, we think this instruction should have been given.

It further appears that the court instructed the jury, upon his own motion, as follows: "You are instructed that it is no defense to this action that some person other than plaintiff aided said minor to leave his home; that the testimony relating to some other person aiding him to leave his home was admitted solely for the purpose of affecting the credibility of the witness." It is our opinion that the court erred in giving this instruction. There was testimony tending to show that Harry's stepmother aided him to leave his father's home, and, if the testimony of the defendants' witnesses was true, the fact that his sister merely gave him an asylum at her home in Merrick county would, under the circumstances, have been a defense to the plaintiff's action.

The trial court further instructed the jury that if they found for the plaintiff they should award him damages for the loss of the son's wages, for defendants' tort in inducing and enticing him away from the custody of his father, the

expense that the father incurred in reclaiming him, and for the injury the father sustained in the loss of the companionship and society of the son. As we view the record in this case, the plaintiff should not have been allowed to recover anything other than the reasonable value of the services of his son, which should not exceed the amount fixed in his notice.

For the foregoing reasons, the judgment of the district court is reversed and the cause is remanded for further proceedings.

REVERSED.

HAMER, J., not sitting.