CHARLES TAVLINSKY ET AL., APPELLEES, V. RINGLING
BROTHERS CIRCUS ET AL., APPELLANTS.

FILED JUNE 12, 1925.  No. 23064

1. **Pleading: ADMISSIONS.** Where plaintiffs plead in their petition that defendants enticed, induced and persuaded their minor son to leave their custody and service, and defendants answer that the son sought employment of them and was so employed, and plaintiffs reply, admitting this part of the answer, such admission negatives the allegation of wrongful enticement, inducement and persuasion.

2. **Parent and Child: CUSTODY OF CHILD: RIGHT OF ACTION.** Parents have a right to the care, custody, service and companionship of their minor children, and, when they are wrongfully deprived thereof by another, they have a right of action therefor, even in a case where the child has sought the employment.

3. ——: ——: ——: WAIVER. Where parents receive and appropriate to their own use wages of their minor child earned while wrongfully employed by another, with full knowledge of the material facts, they ratify such employment and waive their right to sue in tort.

4. ——: ——: ACTION: INSTRUCTIONS. On a trial to a jury, each party is entitled to instructions fairly covering the issues raised by the pleadings, and the theory upon which the case is tried, and a refusal thereof by the court, when requested by way of an instruction tendered, is reversible error.

APPEAL from the district court for Lancaster county: FREDERICK E. SHEPHERD, JUDGE. *Reversed.*

*John M. Kelley, W. H. Herdman* and *A. L. Tidd,* for appellants.

*Wilmer B. Comstock, contra.*

Heard before MORRISSEY, C. J., DAY, GOOD, THOMPSON and EVANS, JJ.

THOMPSON, J.

Plaintiffs Charles Tavlinsky and Julia Tavlinsky, husband and wife, brought this action in the district court for Lancaster county against Ringling Brothers Circus and Barnum and Bailey Circus, seeking to recover $10,000 for the alleged enticement of plaintiffs' minor son, Jacob Tavlinsky, from their home and service. They allege in their petition, in substance, as follows:

That defendants are corporations and associations; that on the first day of September, 1920, Jacob Tavlinsky was an infant 15 years of age, who on this date, and at all times prior thereto, resided with his parents, working for and assisting them, and they supporting and caring for him; that he was a boy of good habits; that on the above date defendants wickedly and unlawfully imprisoned Jacob, and enticed, induced and persuaded him to leave his parents in Lincoln and travel with defendants; that defendants have continually since the above date kept Jacob imprisoned and in their custody, and compelled him to associate with dissolute characters, debauching and ruining him, and have alienated his affections from his parents, and permanently deprived them of his earnings, affections, society and companionship, to plaintiffs' damage in the sum of $10,000.

Defendants for answer, in substance, deny each and every allegation except such as are specifically admitted; allege that the son of plaintiffs "sought employment with the defendants, at Lincoln, Nebraska, and was engaged in working as others, and continued to work for said firm at its winter headquarters;" that he was regularly paid for his services, and was not in any manner prevented from leaving his work; that while at home he was ill treated by his parents; that while he was in defendants' employ they at

no time imprisoned or restrained the son, or compelled him to associate with dissolute characters, or in any manner debauched or ruined him; that he always was, and now is, permitted to leave defendants' employ, and act in that regard as he sees fit; that out of his salary he paid his parents $150; that defendants never had any notice not to pay the son his salary; that the matters alleged in the petition are insufficient to constitute a cause of action.

For reply, plaintiffs, in substance, admit that defendants are associated for the purpose of operating a circus, and that plaintiffs are the parents of Jacob Tavlinsky; and further admit that "the son of plaintiffs sought employment with defendants in Lincoln, Nebraska, and was then and there employed by defendants; that he performed service and duties for said defendants, and continued to work for said firm at its winter quarters." A general denial is then interposed.

Trial was had to a jury. At the close of plaintiffs' evidence defendants moved for a directed verdict in their favor, which was overruled. Verdict was returned for $7,500. Motion for a new trial overruled. Defendants appeal, alleging as grounds for reversal, among others, in substance, that the judgment rendered is not supported by the pleadings or evidence; that the court erred in giving certain instructions on its own motion, and in refusing others offered by defendants; and in overruling defendants' motion for a directed verdict in their favor.

It is important, first, to determine just what issues are raised by the pleadings and covered by the evidence. It will be noticed that as grounds for recovery plaintiffs allege in their petition that Jacob Tavlinsky was wickedly and unlawfully imprisoned by defendants, and by them induced, enticed and persuaded to leave his parents. In their reply, plaintiffs admit the allegation in the answer that Jacob sought employment with defendants, and was by them employed, performing services and duties for them, and working at their winter quarters. Such admission negatives the allegation in the petition that the son was induced and

enticed by defendants to enter their employ. The use of the word "sought" in the answer, and admitted in the reply, amounts to an admission that the son's joining defendants was a voluntary act on his part, and not one superinduced by them. As is well said in *Butterfield v. Ashley*, 2 Gray (Mass.) 254, in a case involving a similar state of facts: "To constitute enticement of a servant from his master's service, within the meaning of the law, inducements must be presented to him, while he is in that service, which cause him to leave it. After he has, of his own accord, left such service, and while he is out of it, he cannot be enticed from it." See, also, *Caughey v. Smith*, 47 N. Y. 244.

The record is without evidence, taken with the admissions in the pleadings, to sustain a finding that defendants imprisoned, secreted, or enticed plaintiffs' son, as these terms are understood in law. It must be remembered, also, that harboring is not alleged. However, as we view the law applicable to the facts pleaded, admitted, and proved, it was not necessary that defendants should have imprisoned, secreted, or enticed the son in order to give rise to a cause of action in tort against defendants. They must have known, and did know, at the time they employed the son that he was a minor. By employing him without the consent of his parents, under the facts disclosed, defendants deprived them of his society, services, and companionship, for which they became liable, unless the parents elected to ratify the employment, or waived the tort.

In *Everett v. Sherfey*, 1 Clarke (Ia.) 356, it is said: "It is not probable that he (defendant) actually secreted the son, or secured or harbored him, as we speak of harboring or secreting those who have violated the law. Neither is it necessary that he should have done so, in order to make him liable. It was the absolute right of the father to have the society, services, and care of his son, unless he had forfeited the same, of which we have no evidence."

Then, as held in *Soper v. Igo, Walker & Co.*, 121 Ky. 550: "It has always been the law that, if anyone wrongfully abducts from the father one of his children, he can maintain

an action against the wrongdoer for damages, based upon the principle that the father has the right to the services of his child, it matters not whether the child renders such services, and, having such a right upon which to base his action, he is not confined in a recovery to the loss of services alone, but may recover for injury to his feelings and the loss of the companionship of his child."

However, it is important to note that the evidence shows that plaintiffs had knowledge of their son's situs with defendants within five days after he left home, and thereafter received a series of letters from him, in each of which he stated where he was. These letters were answered, yet there is no evidence of a request for the son's return, or notice to defendants that plaintiffs objected to the employment. In the first of these letters he informed plaintiffs that he would return to visit them a year later, which he did. The writing of the letters and the return home were voluntary acts on the part of the son. During such stay the record shows that no effort was made by plaintiffs to prevent the son's return to defendants beyond mere verbal requests that he remain at home. There is no evidence of even an attempt to use physical or legal restraint to prevent such return, which would have been perfectly proper under the circumstances. This situation should have been covered by a proper instruction.

It was during his stay, above noted, that this action was brought. As soon as the son learned of it, the evidence shows, in substance, he informed plaintiffs in their home that he believed such action would prevent his continuing in defendants' employ. At this time, witness Paul Cook, a close friend and confidential advisor of plaintiffs, called at their home. Jacob requested Cook, with plaintiffs' knowledge, to accompany him to see defendants, that he might "square himself" and acquaint them with the fact that he had not been responsible for the action against them, and that he might remain with them. This Cook did, without protest from plaintiffs.

Travlinsky v. Ringling Bros. Circus.

Then, at the time of his stay, the son gave plaintiffs $145, which they accepted with knowledge that a part of it, if not all, was from his earnings while with defendants. Although they said they would keep it for him, the mother testifies that later in the same day he demanded this money, which she refused to give him, and that afterwards she and her husband deposited it in the bank in Jacob's name, later appropriating it to their own use, but, as she says, with the intention of paying it back to Jacob. It must be remembered that defendants allege in their answer that "out of his salary he paid to his parents $150, and that this defendant has never received any notice directly or indirectly not to pay their minor son his salary." This is denied in the reply. Thus, the question of a ratification of the son's contract of employment with defendants is raised by the pleadings as well as by the evidence. However, in the instruction given by the court which purported to contain the answer, no reference is made to this allegation or the legal effect of an appropriation of this money to plaintiffs' own use, nor is such issue covered by any instruction given. Instruction No. 2, offered by defendants and refused, contains the entire answer, including, of course, this allegation, and instruction No. 9a, offered by them and likewise refused, is as follows:

"You are instructed that, if you find from a preponderance of the evidence that the plaintiffs accepted any portion of the wages earned by Jacob Tavlinsky and paid by the defendants to the said Jacob Tavlinsky, the acceptance of such wages is a waiver of the wrongful employment, if such employment were wrongful, and that the acceptance of any portion of such wages constitutes a ratification of the employment of Jacob Tavlinsky by the defendants, and if you find that plaintiffs did accept such wages, then your verdict should be for the defendants and against the plaintiffs."

From what has been said regarding the receipt of this money, it will be seen that the evidence is conflicting in reference thereto. Therefore, such disputed question of

fact should have been left to the jury under an applicable instruction. As is well said in *Rasmusen v. New York Life Ins. Co.*, 91 Wis. 81: "Doubtless, the act out of which the waiver is deduced must be an intentional act, done with knowledge of the material facts, but it cannot be necessary that there should be an intent to waive. Such a rule would allow a secret intention to defeat the legal effect of unequivocal and deliberate acts." And in *Pfeiffer v. Marshall,* 136 Wis. 51, it is said: "Intent to waive may be shown by conduct." If plaintiffs received the benefit of this transaction, knowing it to be such, they must necessarily have ratified or at least approved of it and they cannot be heard to say that it was wrongful. The rule thus announced is in harmony with our holdings in *United States School-Furniture Co. v. School District,* 56 Neb. 645, and *Barber v. Stromberg-Carlson Telephone Mfg. Co.,* 81 Neb. 517.

If plaintiffs accepted and appropriated this money as their own (which we do not decide), this case is brought clearly within our holding in *Wolf v. Vannoy,* 98 Neb. 637. If by writing the letter in that case it was reduced to an action for the son's wages only, and if, as approved by us therein, "A parent's election to sue for the child's wages is a waiver of the tort and bars his right to recover for enticing the child away," certainly the receipt and appropriation of a part of the wages earned would limit the plaintiffs' recovery to one for wages.

On a trial to a jury, each party is entitled to instructions fairly covering the issues raised by the pleadings, and the theory upon which the case was tried. By denying this to defendants, reversible error was committed. *Hanover Fire Ins. Co., v. Stoddard,* 52 Neb. 745; *Kyd v. Cook,* 56 Neb. 71.

Other assignments of alleged error have been considered; but, in view of the conclusion reached, we deem it unnecessary to discuss them.

The judgment of the district court is

REVERSED.