FRED J. DRIVER, JR., ET AL. V. STATE OF NEBRASKA.

FILED MARCH 26, 1928. No. 26087.

*Charles S. Reed* and *William L. Randall,* for plaintiffs in error.

*O. S. Spillman, Attorney General,* and *George W. Ayres, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY and HOWELL, JJ., and BROADY, District Judge.

Rose, J.

In two prosecutions by the state in the district court for Douglas county Fred J. Driver, Jr., and H. R. Mitchell, defendants, were separately accused of assault and battery upon the person of Walter Rosicky in Omaha, April 23, 1927. They pleaded not guilty and were tried together, a jury being waived. Each defendant was convicted and sentenced to pay a fine of five dollars and costs. As plaintiffs in error they present for review the record of their convictions.

The determining question is the sufficiency of the evidence to prove guilt beyond a reasonable doubt. William Rosicky was complainant. The prosecutions grew out of a controversy between him and defendants over the recaption of an automobile for nonpayment of a delinquent instalment of the purchase price.

Addie M. Rosicky, wife of complainant, entered into a conditional sale contract July 30, 1926, with the Julien Chevrolet Company for the purchase of a Chevrolet coach. Of the purchase price $408.75, payable in instalments of $34.06 on the 30th day of each month, remained unpaid. Payment in full was a condition of passing title to the purchaser. Recaption without demand was authorized by the purchaser upon failure to pay an instalment when due. Time was of the essence of the contract. It was agreed that possession of the purchaser after a breach of contract on her part should be considered unlawful. On these terms she procured possession of the coach. She did not pay any monthly instalment when due. Both the conditional sale contract and the title of the Julien Chevrolet Company to the coach were formally transferred to the General Motors Acceptance Corporation. Defendants represented that corporation in making collections. Repeated demands for delinquent instalments had been made. The conditional purchaser, when requested to make payments, had referred Mitchell to her husband, the complaining witness, who occasionally remitted instalments and attended to some of the correspondence. More than 20 letters insisting on

payment after default had been sent through the mails by Mitchell to the purchaser or her husband. The letters demanded performance and contained repeated references to the terms of the conditional sale. Following a telephonic conversation relating to the unpaid purchase price, Mitchell, April 19, 1927, representing, as in all his letters, the credit department of the General Motors Acceptance Corporation, addressed and mailed to the complaining witness a letter stating that the unpaid balance of the purchase price was then $170.30 and demanding payment of the instalment due March 30, 1927. In a reply written by the complaining witness himself April 20, 1927, the balance stated was questioned, a discount suggested and delinquency treated as "a minor matter." He testified at the trial that he was assaulted by defendants April 23, 1927. He was a wholesale dealer in neckties with an office in the Uptown Theatre at Twenty-ninth and Leavenworth streets, Omaha. At the time of the alleged assault the Chevrolet coach in controversy was standing in the street near the Uptown Theatre. In material respects his version of what occurred, as told on the witness-stand, may be summarized for the purposes of review as follows:

Defendants came to his office April 23, 1927, demanded $34.06 on peril of towing the coach away, and left. He followed them and asked them "what they proposed to do." They said they intended to tow the car away. He suggested that the three of them go to his home and talk to his wife. Defendants consented. He wanted to go in the coach but Driver said to leave it and go in the company's car. The witness agreed and they started to his home. On the way all consented to stop for a moment near the Keeline Building at Seventeenth and Harney streets. There the witness excused himself, went upstairs to see his attorney, explained the situation, was told defendants had no right to seize the coach and was advised to go back to it, get into it and drive home. In a taxi witness returned to Twenty-ninth and Leavenworth streets. When he arrived defendants were there. While he was approaching

the coach on foot, defendants walked toward him, trying to block his way. He stated what his attorney had advised and told them if they wanted the car to get it in a lawful manner. Mitchell tried to block his way and grabbed him by the shoulder. He tussled with Mitchell a few moments, shook him off and walked to the door of the coach. Driver was standing on the running board. Witness unlocked the door. Driver started to get in, pulled at the former's overcoat and grabbed his left arm, which had been broken in a street car accident, causing considerable pain. Witness got in and slammed the door. Driver opened it. Mitchell wedged his way in. Following the testimony narrated witness continued in his own language as follows:

"I ordered him out of the car and he said: 'No, I propose to sit right here—sit right in this car.' I said: 'I am going on back to my attorney.' He said: 'That is all right. I will go down with you.' And he says: 'We will thrash this matter out before an attorney.' So I drove to Seventeenth and Harney, and I said: 'Here we are.' I was expecting him to get out of the car, and he said: 'No, I am going to stay in this car. If your attorney wants to see me he will have to come downstairs to talk to me.' I didn't want any more scuffling with him, because I had quite a little pain, so I got out of the car and went up."

He testified also that his attorney was absent and there is nothing to show any further assault.

On the evidence outlined defendants were found guilty of assault and battery, though five witnesses testified to the contrary. In connection with the contract granting the purchaser the right to possession and use of the coach while performing her obligations, the testimony of the complaining witness himself indicates that he was in the wrong when he refused to pay a past due instalment and at the same time forcibly opposed the recaption which had been authorized in direct and positive terms. The complaining witness had no greater right than his wife to resist recaption. His own testimony shows that defend-

ants, before depriving him of possession, consented to his consulting with his wife and with his attorney. It also shows that the opportunity to pay the delinquent instalment or to yield peaceable possession on stipulated terms was open to him. The consideration shown by defendants under the circumstances was inconsistent with intentional and criminal violence on their part. It may fairly be inferred that they were attempting to perform their duties to their principal. The conditional sale contract was drawn in a form to avoid the necessity of replevin in the event of a default in payment. This theory of the law has been recognized in Nebraska. *Barr v. Post,* 56 Neb. 698.

Furthermore, each defendant testified positively that he did not make an assault on, or pull at the arm, shoulder or coat of, the complaining witness. In addition three disinterested witnesses who observed what occurred at the time and place in question testified that defendants did not strike or otherwise assault the complaining witness. The conclusion is that the evidence is wholly insufficient to prove beyond a reasonable doubt that defendants were guilty as charged. There should have been no conviction. The sentences are reversed and both prosecutions dismissed.

REVERSED AND DISMISSED.

Note—See Assault and Battery, 5 C. J. 788 n. 2; 13 L. R. A. n. s. 1132; 19 L. R. A. n. s. 607; L. R. A. 1915F, 673—36 A. L. R. 853; 24 R. C. L. 486; 6 R. C. L. Supp. 1421.