(No. 6505.  April 29, 1938.)

C. I. T. CORPORATION, a Corporation, Appellant, v. IRA
  COREY, as Sheriff of Bingham County, Idaho, Re-
  spondent.

[79 Pac. (2d) 542.]

J. H. Andersen, for Appellant.

John W. Jones, for Respondent.

BUDGE, J.—This action in claim and delivery was brought by appellant for the recovery of a Plymouth sedan, which had been taken into possession by respondent by virtue of an affidavit of foreclosure and sale under a chattel mortgage.

Melvin Gardner purchased the automobile in controversy from the Cox Motor Company under a conditional sale contract, reserving title in the Cox Motor Company until payment made, dated April 25, 1934. This contract was then assigned by the Cox Motor Company, in blank, to the Western Finance Company and the payments due under the contract were guaranteed by the Cox Motor Company. November 22, 1934, while said conditional sale contract was in full force and effect, Gardner and wife made, executed and delivered a chattel mortgage on said automobile to George

Ball to secure payment of a note for $300, the chattel mortgage being filed for record November 23, 1934, in Bingham county. Subsequent to the giving and filing for record of the chattel mortgage, and about June 23, 1935, Gardner then being in default in payments due under the conditional sale contract, a collector for the Western Finance Company called upon Gardner to make collection of the past due payment or to take the automobile. Gardner being unable to make the payments the automobile was brought to the Cox Motor Company, left there, and the key to the automobile was surrendered by the collector to Cox of the Cox Motor Company. Upon demand of the Western Finance Company that the contract be closed out the balance due under the conditional sale contract was paid by the Cox Motor Company in accordance with its guarantee and the original of the conditional sale contract was delivered by the Western Finance Company to Cox of the Cox Motor Company. The day following, June 24, 1935, the automobile was redelivered to Gardner after he had executed a second conditional sale contract, which was by the Cox Motor Company guaranteed and assigned to the C. I. T. Corporation. Thereafter, the $300 note of the Gardners being due and unpaid, George Ball brought an action to foreclose the same by affidavit and sale and the sheriff took possession of the automobile. The automobile was then repossessed by appellant upon its furnishing the necessary undertaking on claim and delivery.

The trial court entered findings of fact, conclusions of law and judgment in favor of respondent, from which judgment this appeal is taken.

Numerous assignments of error urge that the court failed to make findings upon certain material issues and that the findings and judgment are not supported by, but are contrary to, the evidence. Among other things the court found that the Cox Motor Company on June 24, 1935, had no title to or interest in said automobile which could be sold to Gardner or anyone and that the pretended conditional sale contract of June 24, 1935, is of no force or effect and the assignment thereof vested no right or interest in said automobile in appellant. The court also found that the chattel mortgage was subject only to the terms and conditions of

the first conditional sale contract held by the Western Finance Company as assignee thereof. The findings appear to be sufficiently specific upon the material issues for a determination of the case. The decisive question presented appears to be whether or not the actions taken on June 24, 1935, with reference to the automobile and the first conditional sales contract, wiped out the right, title, and interest of Gardner and likewise the interest of the chattel mortgagee gained through Gardner. In other words, whether the title to the automobile and the conditional sale contract passed to Gardner or to the Western Finance Company and subsequently to the Cox Motor Company. As expressed in respondent's brief the proposition simply stated is:

"Had the car been repossessed by the Western Finance Company, the contract would have become *functus officio,* and the interest of Gardner in the automobile would have been thereby extinguished."

The record is uncontradicted to the fact that the conditional sale contract was originally between the Cox Motor Company, as seller, and Gardner, as purchaser, and that the name Western Finance Company appearing thereon, in the printed portion of the form, was a clerical error, brought about by the use of a form of the Western Finance Company and a failure to strike out such name and insert in lieu thereof the name Cox Motor Company. The instrument itself corroborates such uncontradicted testimony in that the contract is signed by the Cox Motor Company, as seller, and the name Western Finance Company, does not otherwise appear.

It appears that at the time of payment by the Cox Motor Company and the delivery to it of the conditional sale contract by the Western Finance Company there was no written assignment of the conditional sale contract from the Western Finance Company to the Cox Motor Company, and there is some argument in respondent's brief upon the proposition that the Western Finance Company did not reassign the contract to the Cox Motor Company. From the conditions appearing on the face of this instrument it does not appear that a written assignment thereof was either essential or of any particular value or moment, inasmuch as the instrument discloses title thereto to be in the Cox Motor

Company, the instrument disclosing no change in ownership by assignment or otherwise. In other words, it appears to be a conditional sale contract between Cox Motor Company, as seller, and Gardner, as purchaser, unassigned. The assignment clause on the instrument does not purport to assign the same to any person or persons, but was left in blank. It appears the assignment clause was in blank when the contract was received by the Western Finance Company and was returned to the Cox Motor Company in the identical condition. To all intents and purposes a return of the conditional sale contract to the Cox Motor Company by the Western Finance Company was as effectual as the preparation of a written assignment.

The real question presented is whether or not there was a repossession or a retaking of possession by the Western Finance Company. 7 Blashfield, Cyclopedia of Automobile Law and Practice, section 4633, recites:

"Where an automobile is sold on condition that the title thereto shall not vest in the vendee until payment of the specified purchase price, the legal title remains in the vendor until the payment is made, and, if the vendee fails to make the payment within the specified time, the vendor is entitled to possession of the property. And, where the vendor elects to recover the possession of the property on default in payment by the buyer, it is the duty of the buyer, upon demand, to surrender the possession to the vendor.

"The conditional seller may retake possession on the default of the buyer without any agreement to such effect, and he may do so without resorting to the courts, if he can obtain the machine without breach of the peace, and this is especially true where the contract authorizes such a retaking."

(*McCargar v. Wiley*, 112 Or. 215, 229 Pac. 665; *Blackford v. Neaves*, 23 Ariz. 501, 205 Pac. 587; *Strauss v. Oppenheimer*, 185 N. Y. Supp. 849; *Percifield v. State*, 93 Fla. 247, 111 So. 519; *Driver v. State*, 116 Neb. 666, 218 N. W. 588; *Gaffney v. O'Leary*, 155 Wash. 171, 283 Pac. 1091; *Lynch v. Sable-Oberteuffer-Peterson*, 122 Or. 597, 260 Pac. 222, 55 A. L. R. 180; *People v. Halliday*, 237 App. Div. 302, 261 N. Y. Supp. 342.) The record is not in conflict with

reference to what occurred in the instant case. The conditional sale contract provides in part as follows:

"Should said Purchaser fail to make any of the said payments in the amounts, manner and within the time herein provided for, or should said purchaser fail to perform any of the terms or conditions hereof in the manner and within the time herein provided for, said Seller or Seller's assignee shall have the option, *without demand or notice,* to exercise either of the following remedies, to wit: . . . .

"(d) Take immediate possession of said personal property, attachments accessories and equipment wherever and whenever found, and without notice or demand declare the Purchaser in default and in such event all of the rights, titles and equities of said Purchaser in and to said personal property shall immediately cease and determine, and said Seller or Seller's assignees shall be released from all obligations to transfer or deliver said personal property to said Purchaser, and all sums of money theretofore paid and then due and unpaid by said Purchaser to said Seller hereunder shall remain the sole property of said Seller or Seller's assignee and shall be considered as compensation for the use, wear and tear and depreciation of said personal property by said Purchaser, and said Purchaser agrees to forthwith pay said Seller or Seller's assigns all payments and interest then due and unpaid as part compensation for the use of said personal property as aforesaid."

The record clearly discloses that Gardner was in default and that demand was made by Hegstrom, collector for the Western Finance Company, upon Gardner for either the payments or return of the automobile and Hegstrom finally asked for a "close-out" on the automobile. An examination of the record leads to the one conclusion that this action resulted because of the amicable manner in which repossession of the car was taken, or the "close-out" was handled. The retaking was peaceable, with the assent of the purchaser, and without the necessity of court action or any forcible means. The purchaser Gardner testified:

"Mr. Hegstrom demanded a payment, my delinquent payments, I don't remember whether one payment due or two. *He demanded a payment or the car,* and we went down to

Cox Motor Company to see if I could raise some money, and see what I could do. *He asked for a close-out on the car, and after talking to Mr. Cox, he asked him to present us with a close-out.*"

and:

"I went up there with Mr. Hegstrom to talk to Mr. Cox, and I had talked to Mr. Cox previously to try and get a refinancing on the car. I could see it was too heavy a load, *so at that time he suggested that we close this contract out and he could resell the car to me again. And, if I remember right that was just exactly what happened,* and he paid them off, and it was the next day or next afternoon that I signed a new contract."

Mr. Cox testified that Mr. Gardner was delinquent in his payments on the contract, that the collector endeavored to collect the money from him and that on the failure of Mr. Gardner to pay the demand the Western Finance Company collector brought the car in and demanded payment under the guarantee from the Cox Motor Company; that the amount was paid by the Cox Motor Company and the contract and the key to the car was then surrendered to him by Mr. Hegstrom. The more pertinent portions of Mr. Cox's testimony are as follows:

"Q. Do you know whether Mr. Gardner was delinquent in his payments on that contract at the time the car was repossessed by the Finance Company?

"A. He was."

"Q. Now how did you come back into possession of this Exhibit 'B' (the conditional sale contract)?

"A. By demand made by the Western Finance Company.

"Q. Did you get it from the Western Finance Company?

"A. I did.

"Q. Well under what conditions?

"A. On the failure of Mr. Gardner to pay that demand, and me on the endorsement on the back.

"Q. And did they deliver you the contract?

"A. They did.

"Q. And what did they do prior to the time they delivered to you the contract?

"A. They endeavored to collect money from Mr. Gardner.

"Q. To whom did you deliver that check, Mr. Cox? ($286.66 paid by Cox to Western Finance Company.)

"A. To the collector of the Western Finance Company.

"Q. And at that time did you receive this conditional sales contract marked Plaintiff's Exhibit 'B'?

"A. I did.

"Q. And are you the owner of that contract at this time?

"A. I am."

"Q. And did you at the time of the taking of this contract, reduce the car to your possession. Was it in your garage?

"A. It was.

"Q. Well, where was the car when you got this contract back from them—The Western Finance Company?

"A. In my garage.

"Q. How did you get it?

"A. They brought it in.

"Q. Who brought it in?

"A. Western Finance Company collector.

"Q. And then what took place?

"A. They demanded payment on that endorsement on the back of the contract, so we arranged to pay them off.

"Q. That is you took up this contract?

"A. Yes sir."

"Q. Now at that time (when the car was brought in) did you get the key to the car?

"A. Yes sir.

"Q. Who surrendered it to you?

"A. Western Finance Company collector.

"Q. You got it from the collector?

"A. Yes sir.

"Q. When did you get it?

"A. At the time they brought it in."

What constituted the retaking of possession is the subject of discussion in *Boas v. Knewing*, 175 Cal. 226, 165 Pac. 690, L. R. A. 1917F, 462, wherein it was held that the seller's assignee, by threat to replevin, had elected to take the car instead of bringing suit for the price, and that the buyer

was entitled to and had surrendered the car under the terms of the contract. It is said in the opinion:

"Vendor's assignee by threat to replevin had indicated his election to take the car on the vendee's default rather than to waive the right of resuming possession and to sue for the price. Since plaintiff had thus indicated his election, the vendee was not bound to await an action which could only result in the recaption of the subject of the conditional sale and the superadded burden of costs. He returned the automobile to H. O. Harrison Company just as he had agreed to do in case any or all of the notes should remain unpaid at maturity. This return was not repudiated by the vendor's assignee, and the automobile at the time of the commencement of the action was still in the garage belonging to the original vendor." (*Oregon Motor Co. v. Carter*, 123 Or. 215, 261 Pac. 691.)

In the instant case the assignee indicated his election to take the car on the purchaser's default, demanding of Gardner either payment or the car. Peaceably and with the apparent assent of the purchaser the Western Finance Company retook possession and immediately transferred all its right, title and interest in the automobile and contract to the Cox Motor Company. We are constrained to hold that there was a retaking or repossession on the part of the Western Finance Company and a transfer to the Cox Motor Company. The court's findings are not supported by but are contrary to the evidence, and the judgment must be reversed and it is so ordered, with instructions to the trial court to enter judgment in favor of appellant. Costs awarded to appellant.

· Holden, C. J., and Morgan and Givens, JJ., concur.

Ailshie, J., did not sit at the hearing nor participate in the decision.